UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SKYMALL, INC. and GEMSTAR-TV GUIDE : 05 Civ. 3534 (SHS)
INTERNATIONAL, INC., :
                      Plaintiffs, : OPINION & ORDER
   :
     -against- :
   :
ALAN BUDD ZUCKERMAN and :
GENESIS SELECT CORPORATION, :
   :
                      Defendants. :
-------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      SkyMall, Inc., and Gemstar-TV Guide International, Inc. (collectively, "SkyMall") seek a declaration with respect to their rights and obligations under a "Warrant to Purchase Common Stock" (the "Warrant") issued to Alan Budd Zuckerman and Genesis Select Corporation (collectively, "Zuckerman") and a subsequent "Assumption and Amendment to Warrant Agreement" (the "Agreement"), by which Gemstar assumed SkyMall's obligations under the Warrant. Defendants counterclaim for breach of contract. Plaintiffs have moved for summary judgment on both their claim and Zuckerman's counterclaim. At issue is whether the exercise price of the Warrant is $2.00 per share of the SkyMall stock to which Zuckerman was entitled by the original Warrant or whether instead the price is $2.00 per share of the Gemstar stock to which Zuckerman became entitled by the terms of the Agreement. Because the Agreement unambiguously provides that the exercise price is $2.00 for each original SkyMall share, plaintiffs' motion for summary judgment is granted.

I. BACKGROUND

      SkyMall is a corporation that sells a variety of merchandise through catalogues, distributed to passengers on commercial airlines, and through the internet. (Compl. at ¶13.) On June 30, 2000, SkyMall issued a "Warrant to Purchase Common Stock" to Zuckerman as partial compensation for

1

the financial consulting services he had rendered to it. (Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") at ¶1; Decl. of David E. Miller dated August 22, 2005 ("Miller Decl."), Ex. A at 7, 15. ) Zuckerman is, and was at that time, President of Genesis Select Corporation, a financial consulting company through which he rendered his financial advice to SkyMall. (Compl. at ¶ 1; Pl.'s 56.1 at ¶3; Miller Decl., Ex. A at 7.) The Warrant entitled Zuckerman to buy 150,000 shares of SkyMall stock for $2.00 per share at any time in the next five years. (Pl.'s 56.1 at ¶8; Miller Decl., Ex. A at 7, 15.) Zuckerman assigned his right to purchase 810 of the 150,000 shares to his assistant at Genesis Select, Cynthia Cox. (Pl.'s 56.1 at ¶9; Miller Decl., Ex. D at 111.)

Approximately one year after the Warrant was issued, SkyMall merged with Gemstar, a publicly traded entertainment and technology company that develops and distributes consumer entertainment products and services. (Compl. at ¶¶13, 14; Pl.'s 56.1 at ¶10; Miller Decl., Ex. A at 8.) At the time of the merger, Gemstar, SkyMall and Genesis Select also entered into an "Assumption and Amendment to Warrant Agreement." (Pl.'s 56.1 at ¶¶2, 11; Miller Decl., Ex. A at 9.) That Agreement provided that, pursuant to the merger, the Warrant would become exercisable for Gemstar stock in lieu of SkyMall stock according to the following formula:

> [T]he SkyMall Warrant shall be assumed by Gemstar and shall be deemed to be amended so that the warrant is exercisable solely for, in lieu of SkyMall common stock: (a) the aggregate number of shares of Gemstar Common Stock equal to the product of (i) the aggregate number of shares of SkyMall common stock issuable upon full exercise of the SkyMall Warrant, multiplied by (ii) .03759, and (b) cash in the amount equal to the product of (i) the aggregate number of shares of SkyMall common stock issuable upon full exercise of the SkyMall Warrant, multiplied by (ii) $1.50.

(Agreement, annexed to Miller Decl., Ex. A at 30.)

The formula therefore provides that in place of the 149,190 SkyMall shares Zuckerman was originally entitled to purchase, Zuckerman is instead entitled to receive 5,608 Gemstar shares (149,190 x .03759 = 5,608) and $223,785 in cash (149,190 x $1.50 = 223,785). The Agreement was

2

expressly styled as an agreement by Gemstar to assume SkyMall's obligations: "each warrant to acquire SkyMall common stock outstanding . . . shall be assumed by Gemstar and shall be deemed to constitute a warrant to acquire, for each share of SkyMall common stock issuable upon exercise of the SkyMall Warrant immediately prior to the Merger, .03759 of a share of Gemstar common stock . . . and $1.50 in cash." (Pl's. 56.1 at ¶14; Miller Decl., Ex. A at 30.)

The Agreement also established an exercise price. First, the Agreement stated that the original Warrant entitled the holder "to purchase an aggregate of 149,190 shares of SkyMall common stock at an exercise price of $2.00 per share." This was labeled "the Original Exercise Price." (Agreement, annexed to Miller Decl., Ex. A at 30.) The Agreement then stated that "[t]he exercise price of the Assumed Warrant shall be the same as the Original Exercise Price." (Id. at 31.) Finally, the Agreement clarified that "[e]xcept as set forth in this Agreement and to the extent practicable, the specific terms and conditions of the SkyMall Warrant shall remain as they were prior to the Merger, and the Assumed Warrant shall be exercisable as provided in the SkyMall Warrant immediately prior to the Merger." (Id.)

In March 2005, Zuckerman attempted to exercise the Warrant by tendering to Gemstar a check in the amount of $11,216.50. (Compl. at ¶ 25; Ans. at ¶ 25.) SkyMall, claiming that the amount Zuckerman tendered was insufficient, refused to honor the Warrant on those terms. (Countercl. at ¶ 26.)

SkyMall then commenced this action, seeking declaratory relief. (See Compl.) SkyMall asserts that the Agreement did not alter the exercise price of the Warrant and that this price therefore remains at $2.00 per share of SkyMall stock. (Compl. at ¶ 20.) SkyMall contends that Zuckerman is required to pay $2.00 per share of SkyMall stock, or $298,380, in order to purchase the 5,608 shares of Gemstar common stock and receive the $223,785 in cash to which the Agreement entitles him. (Compl. at ¶ 22.)

Defendants counterclaimed for breach of contract. (See Ans. & Countercl.) Defendants assert that because the Agreement "expressly amended the specific terms and conditions of the SkyMall Warrant such that the Warrant is no longer a warrant for the purchase of SkyMall common stock, but rather is a warrant for the purchase of Gemstar common stock and cash," the term "Warrant Shares" in the Agreement "is necessarily amended to mean, in this case, 5,608 shares of Gemstar common stock." (Response in Opposition to Plaintiffs' Motion for Summary Judgment ("Opp.") at 7.) Defendants reason that because the term "Warrant Shares" in the Agreement refers to shares of Gemstar, "the exercise price of the Warrant, which is now deemed a warrant for the purchase of Gemstar common stock, should be determined by multiplying the number of shares of Gemstar common stock for which the Warrant is being exercised by $2.00." (Id.) Accordingly, defendants arrive at the exercise price of $11,216 by multiplying 5,608 Gemstar shares by $2.00. (Countercl. at ¶15.) Defendants claim that, by tendering the exercise price contemplated by the Agreement, Zuckerman performed all conditions precedent to SkyMall's obligation to perform. Therefore, defendants claim, plaintiffs breached the Agreement by failing to deliver the Gemstar shares and cash.

II. DISCUSSION

 A. <u>Declaratory Relief is Appropriate</u>

The decision whether to entertain a claim for declaratory relief rests within the Court's "unique and substantial discretion in deciding whether to declare the rights of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); <u>see also</u> <u>Dow Jones & Co., Inc. v. Harrods, Ltd.</u>, 346 F.3d 357 (2d Cir. 2003).

The U.S. Court of Appeals for the Second Circuit has delineated five factors courts should consider in deciding whether to hear a claim for declaratory relief: (1) whether the judgment "will serve a useful purpose in clarifying or settling the legal issues involved"; (2) whether the judgment will finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is

being used merely for procedural fencing or as a race to *res judicata*; (4) whether the use of a declaratory judgment will increase friction between sovereign legal systems; and (5) whether there is a better or more effective remedy. Dow Jones, 346 F.3d at 359-60.

In this action, rendering judgment will "serve a useful purpose." Both parties seek clarification of their rights and duties under the Assumption and Amendment to Warrant Agreement, as evidenced by the defendants' counterclaim for breach of contract. Moreover, the judgment will finalize the controversy and offer relief from uncertainty. The Court has been asked to pass upon the meaning of a contractual term; the Court's determination will enable the parties to choose whether or not to complete a transaction that their disagreement currently prevents them from completing. Finally, this lawsuit neither implicates the sovereignty of another legal system nor does it appear to be part of a strategy of procedural fencing. Therefore, the Court exercises its discretion to hear plaintiffs' claim for declaratory relief.

B. Summary Judgment on SkyMall's Claim for Declaratory Relief is Appropriate

"In a contract action, the court's general objective should be to give effect to the intentions of the parties in entering into the agreements." Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990). If a contract is unambiguous on its face, its proper construction is a question of law, and the issue may be resolved by summary judgment. Id; see also Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002). "If the language unambiguously conveys the parties' intent, extrinsic evidence may not properly be received." Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Whether the language of a contract is unambiguous, and if so, what construction is proper, are legal questions. Id. at 429.

Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Metropolitan Life Ins., 906 F.2d at 889. On the contrary, a contract is ambiguous if "the language used is susceptible to differing interpretations,

5

each of which may be said to be as reasonable as another." Seiden Assoc., 959 F.2d at 428. Contractual language "whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." Metropolitan Life Ins., 906 F.2d at 889. Finally, the court should not find language ambiguous "on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." Seiden Assoc., 959 F.2d at 428.

The Agreement unambiguously defines the stock exercise price as $2.00 per share of SkyMall common stock. Given the plain language of the Agreement, this is the only reasonable interpretation of the meaning of the term "Original Exercise Price." First, the Agreement defines "Original Exercise Price" by stipulating that, pursuant to the original Warrant, Zuckerman was entitled "to purchase an aggregate of 149,190 shares of SkyMall common stock at an exercise price of $2.00 per share (the 'Original Exercise Price')." (Agreement, annexed to Miller Decl., Ex. A at 30.) The Agreement then provides that "[t]he exercise price of the Assumed Warrant shall be the same as the Original Exercise Price" and that "[e]xcept as otherwise set forth in this Agreement . . . the specific terms and conditions of the SkyMall Warrant shall remain as they were prior to the Merger, and the Assumed Warrant shall be exercisable as provided in the SkyMall Warrant." (Id. at 31.) The Agreement does not contain any provision declaring that the "Original Exercise Price" is no longer for each SkyMall share assumed by Gemstar, but is instead the price for each Gemstar share purchased. On the contrary, the Agreement specifically defines the "Original Exercise Price" as the price per SkyMall share, and reiterates that the price under the Warrant "shall be the same." In sum, the contract language is not "susceptible to differing interpretations, each of which may be said to be as reasonable as another." Seiden Assoc., 959 F.2d at 428. Rather, the contract unambiguously sets the exercise price as $2.00 for each SkyMall share to which Zuckerman was entitled under the original Warrant.

6

Moreover, the language of the Agreement is clear that it constitutes an assumption by Gemstar of SkyMall's earlier obligations as set forth in the Warrant. There is nothing on the face of the Agreement to indicate that the parties had any other intention apart from Gemstar's assumption of SkyMall's limited obligation. Zuckerman's interpretation of the Agreement would entitle him to a substantial and guaranteed profit. The original Warrant contained no such guarantee. Therefore, Zuckerman's interpretation significantly expands the scope of Gemstar's duties beyond a mere assumption of SkyMall's obligations. Pursuant to Zuckerman's reading, the Agreement transforms the character of the agreement between the parties from one that was limited to one that is incapable of going "out of the money." As is evident from the face of the Agreement, if Zuckerman could exercise the Warrant for $11,216 and receive $223,785 in cash, plus the Gemstar shares, then he is guaranteed a profit of $212,569, even if the Gemstar shares are completely worthless at the time he exercises the Warrant. Pursuant to SkyMall's reading, by contrast, Zuckerman receives the $223,785 and the Gemstar shares only after he tenders a payment of $298,380. Under the latter reading, whether Zuckerman makes a profit depends on the value of the Gemstar shares, and, presumably, he would choose not to exercise the Warrant if he did not anticipate making a profit on the transaction. Because there is nothing in the Agreement to explain why Gemstar's obligations would be increased in order to guarantee Zuckerman a substantial profit, or to explain that the Agreement was meant to do more than allow Gemstar to assume SkyMall's original obligation under the Warrant, there is no "reasonable basis for a difference in opinion" as to the meaning of the contractual terms. Metropolitan Life Ins., 906 F.2d at 889.

In sum, the Agreement unambiguously sets forth the exercise price as $2.00 per share of the SkyMall stock to which Zuckerman was entitled pursuant to the original Warrant. Because the contract is unambiguous, its construction is a matter of law for the court, Omni Quartz, 287 F.3d at 64, and the Court grants summary judgment to plaintiffs on their prayer for declaratory relief.

    C. <u>Defendants' Counterclaim for Breach of Contract is Denied</u>

Because the Court finds that the language of the Agreement is not "susceptible to differing interpretations," Seiden Assoc., 959 F.2d at 428, and that SkyMall's interpretation is the only reasonable one, Zuckerman's counterclaim for breach of contract is denied. Pursuant to the terms of the Agreement, Zuckerman was required to tender $2.00 per SkyMall share, or $298,380, but instead he tendered only $11,216. Because Zuckerman did not tender the agreed-upon exercise price, plaintiffs' obligations under the contract did not arise, and they are thus not in breach of the Agreement.

### III. CONCLUSION

Because the terms of the Agreement are unambiguous, `plaintiffs' motion for summary judgment in their favor on both their claim and Zuckerman's counterclaim is granted.

Dated: New York, New York
October 25, 2005

SO ORDERED:

*Sidney H. Stein*

Sidney H. Stein, U.S.D.J.